IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| UNITED STATES OF AMERICA | INFORMATION |
| v. | Case No. 19 CR 44 WMC |
| PATRICK O'CONNOR, | 18 U.S.C. § 1343 |
| | 18 U.S.C. § 1956(a)(1)(B)(i) |
| | 18 U.S.C. § 981(a)(1)(C) |
| Defendant. | 18 U.S.C. § 982 |

---

THE UNITED STATES ATTORNEY CHARGES:

### COUNT 1

### Background

1. At times material to this information:

    a. Defendant PATRICK O'CONNOR was a licensed real estate agent and a real estate developer in Waunakee, Wisconsin.

    b. On October 1, 2015, O'CONNOR opened a business checking account (account number XX9201) at Associated Bank in the name of "Madison Financial Services LLC." O'CONNOR and his wife were the only authorized signers on the account.

    c. Associated Bank used the Federal Reserve Bank to process all domestic wire transfers. There was not a Federal Reserve Bank in Wisconsin.

d.  Madison Financial Services LLC was not registered with the Financial Industry Regulation Authority, Inc. (FINRA), or the Securities and Exchange Commission (SEC).

Scheme to Defraud

2.  During the period beginning in or about October of 2011, and continuing to in or about June of 2018, in the Western District of Wisconsin and elsewhere, the defendant,

PATRICK O'CONNOR,

knowingly, and with the intent to defraud, devised and participated in a scheme to defraud investors, and to obtain money by means of materially false and fraudulent pretenses, representations, omissions, and promises.

3.  It was part of the scheme to defraud that O'CONNOR, beginning in 2011, started soliciting individuals to invest in "Madison Financial Services LLC." As part of his solicitations, O'CONNOR made various material misrepresentations to investors regarding Madison Financial Services. For example, O'CONNOR represented that Madison Financial Services would invest all of the funds on the investors' behalf into a TradeStation online brokerage account. O'CONNOR represented that he would use the TradeStation account to actively trade purchased securities and he projected an average annual return on the investment of 2% a month, or 24% annually. In fact, O'CONNOR used a large portion of the funds provided to him for investment in Madison Financial Services for his own personal

2

expenses, expenses related to his real estate development business, or to repay other investors. In addition, of the funds that O'CONNOR deposited into his TradeStation accounts and actively traded, he either lost or withdrew the vast majority of the funds and rarely generated any profit.

4. It was further part of the scheme to defraud that O'CONNOR used investment funds for Madison Financial Services to pay expenses related to his real estate development business and his personal lifestyle, including but not limited to:

    a. residence at 805 Sunrise Bay, Waunakee, WI;

    b. real property located at W10310 Old CS Rd, Poynette, WI;

    c. real property described as "Grand Legacy at Lake Wisconsin," Poynette, WI;

    d. 2015 Bennington Boat model: 2550GBR with a VIN: ETWA66171415;

    e. 2011 Caterpillar bulldozer model-D4KLGP, Serial No. RRR00424.

5. It was further part of the scheme to defraud that O'CONNOR provided investors with purported account statements from their investments with Madison Financial Services. The account statements were fictitious and showed the investors' supposed year-to-date profits and their supposed current portfolio balance. By sending the account statements, O'CONNOR intended to lull investors into believing that he was investing their money in a legitimate investment. O'CONNOR knew that the account statements were fictitious.

6. It was further part of the scheme to defraud that O'CONNOR made payments to some investors using funds provided to him by other investors. O'CONNOR told these investors that the payments were income earned from stock trading, while in fact O'CONNOR knew his stock trades routinely lost money.

7. It was further part of the scheme to defraud that O'CONNOR failed to inform his investors that he lied to them about the true nature of their investment. O'CONNOR failed to tell the investors that he misappropriated their funds to pay for his personal expenses, real estate development expenses, and to provide returns to other investors.

8. It was further part of the scheme to defraud that O'CONNOR received $12,442,318.63 in investor funds and used the vast majority of those funds for his own purposes and did not invest the vast majority of the funds on behalf of the investors.

9. On or about November 16, 2017, in the Western District of Wisconsin and elsewhere, the defendant,

PATRICK O'CONNOR,

for the purpose of executing the scheme, knowingly caused to be transmitted, by means of wire communications in interstate commerce, certain signals and sounds, namely: a bank wire transfer of $200,000 from the account of T.W. at T.D. Bank in New York to the O'CONNOR's business checking account (account number XX9201)

at Associated Bank in the name of "Madison Financial Services LLC" in Waunakee, Wisconsin.

(In violation of Title 18, United States Code, Section 1343).

## COUNT 2

1. Paragraphs 1-9 of Count 1 are incorporated here.

2. On or about January 28, 2014, in the Western District of Wisconsin and elsewhere, the defendant,

PATRICK O'CONNOR,

knowingly conducted a financial transaction affecting interstate commerce, namely, the negotiation of cashier's check number 62766450, drawn on O'CONNOR's BMO Harris personal checking account ending in 0408, in the amount of $200,000, which involved the proceeds of a specified unlawful activity, that is wire fraud in violation of Title 18 United States Code, Section 1343, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, ownership, control, and source of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

(In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i)).

## FORFEITURE ALLEGATION

1. The allegations contained in Counts 1-2 are realleged and

incorporated here for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982 and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offense in Count 1, the defendant, PATRICK O'CONNOR, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following:

a. Money Judgment – a sum of money equal to $9,686,848.00 in United States currency, representing the amount of proceeds obtained as a result of wire fraud;

b. the real property and improvements located at 805 Sunrise Bay, Waunakee, Wisconsin, Tax Parcel ID Number 191-0809-061-0065-1;

c. the real property and improvements located at W10310 Old CS Road, Poynette, Wisconsin, Tax Parcel ID: 11032.A1 11010;

d. $285,146.31 in funds previously seized from TradeStation Securities, Inc. account number XXXX4740;

e. $50,000 in funds previously seized from TradeStation Securities, Inc. account number XXXX123P;

      f.    $11,173.06 in funds previously seized from BMO Harris bank account XXXXXX0408;

      g.    2015 Bennington Boat model: 2550GBR with a VIN: ETWA6617I415.

      h.    2011 Caterpillar bulldozer model-D4KLGP, Serial No. RRR00424.

3. If any of the property described above, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

3-27-19
_____
Date

[signature] J Rendu for

SCOTT C. BLADER
United States Attorney